IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN PEAT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LINCOLN NATIONAL LIFE<br>INSURANCE COMPANY,<br><br>　　　　Defendants. | Civil Action No. |

## COMPLAINT

Plaintiff Stephen Peat ("Plaintiff" or "Mr. Peat") brings this action against Lincoln National Life Insurance Company ("Defendant" or "Lincoln") under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et. seq*. He seeks appropriate remedies as a result of Defendants' wrongful termination of his right to long term disability ("LTD") benefits under a welfare plan sponsored by his employer Forge Group North America LLC, formerly known as Taggart Global, LLC (the "Employer").

### I.  PARTIES

1. Mr. Peat is, and at all relevant times was, a permanent resident of the United States and a resident of Washington County, PA, or Allegheny County in this District.

2. Defendant Lincoln is a wholly-owned subsidiary of Lincoln National Corporation, which is, upon information and belief, incorporated in the state of Indiana and located at 300 South Clinton Street, Fort Wayne, IN  46802.  Defendant Lincoln issued Group Policy No. 000010094076 to Taggart Global, LLC, (the "LTD Policy") to insure long term disability benefits sponsored by Employer.

3. The LTD Policy is an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3). Defendant Lincoln both administers and pays benefits under the LTD Policy.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 29 U.S.C. § 1132(e) and (f) and 28 U.S.C. § 1331.

5. Venue over this action lies in this Court pursuant to 29 U.S.C. § 1132(e)(2).

## III. FACTUAL AVERMENTS

6. Mr. Peat was hired by the Employer in 1998 and continued working there until October 12, 2012, when he became disabled due to liver disease. At all times, he was employed as a Director of Marketing—South America. Among his many job responsibilities, he was expected to travel to South America 80-90% of the time to develop business opportunities for the Employer.

7. Mr. Peat has resided in the United States since April 1998, he became a permanent resident of the United States in 2000, and he remains a permanent resident of the United States.

8. While employed by Taggart, he maintained a residence in the Pittsburgh, PA, area (in McMurray, PA). Even after he became disabled, Mr. Peat paid property taxes and utilities on the McMurray residence, and he maintained insurance on the McMurray home and on his automobile in the U.S. He continued to file United States income tax returns through 2013.

9. As an employee of the Employer, Mr. Peat was covered under the LTD Policy, which provided benefits to an employee who is "unable to perform all of the Main Duties of his or her Own Occupation" and after 24 months, "is unable to perform all of the Main Duties of any occupation which his … training, education or experience will reasonably allow."

10. Throughout the time that Lincoln accepted premiums to insure Mr. Peat's long term disability benefits, Mr. Peat maintained a residence in the United States, even though his occupation

required him to travel extensively throughout the world, particularly in South America during that time, and he still resides in the United States.

11. On or about October 11, 2012, Mr. Peat became disabled due to cirrhosis, which was caused by a schistosomiasis parasite to which he was exposed in Africa and which attacked his liver and kidneys, causing fatigue.

12. At the time that his condition became disabling, Mr. Peat was travelling in Colombia for a work assignment, and was hospitalized there due to his disabling liver disease.  Hoping his condition would stabilize, he intended to return to the United States by the summer of 2013 and return to work.

13. On or about October 11, 2012, Mr. Peat submitted a claim for Group Short Term Disability Benefits to Lincoln using his McMurray address.  In support of his claim, Mr. Peat submitted an Attending Physician's Statement from his primary care physician in McMurray, who stated that Mr. Peat was awaiting a liver transplant to treat his disabling cirrhosis.

14. In a letter dated December 28, 2012, Lincoln approved short term disability benefits to Mr. Peat which were approved through January 17, 2013, the maximum benefit period, and his claim was automatically sent to LTD.

15. While he was receiving medical care in South America, Mr. Peat's health insurance was cancelled and, without this insurance, he was unable to pay for the health care that he needed in the United States.

16. By March 2013, Mr. Peat, who was still in Bogota, Colombia, suffered renal shutdown. The hospital surgeon in Colombia advised that because he had health insurance that paid some of his medical expenses in Brazil and based on the reputations of Dr. Flair Jose Carriho and Prof. Dr. Luiz Carnerio at the Centro Paulista de Gastroenterologia E Hepatologia in Sao Paulo, Brazil, he should seek

treatment in Sao Paulo.

17. On April 4, 2013, Mr. Peat underwent an evaluation by Dr. Flair, who hospitalized him the same day, due to Mr. Peat's rapidly deteriorating condition, and advised that he remain in Brazil for medical treatment due to the diagnosis of liver failure associated with complicated cirrhosis (hepatocellular carcinoma, ascites, pleural effusion and encephalopathy).

18. By May 2013, Mr. Peat learned that he was eligible for a liver transplant and on the transplant list, which would require him to remain in Sao Paulo for another three months. Mr. Peat had no choice but to remain in Brazil to await his liver transplant.

19. After a six month delay, while Lincoln told Mr. Peat that his voluminous medical records were being translated, Lincoln informed Mr. Peat that his benefit in the monthly amount of $7500 was approved in an email dated June 19, 2013.

20. In the email dated June 20, 2013, Lincoln informed Mr. Peat that the payment of LTD benefits would end "at the earliest of one of these options:

> A) you are no longer disabled under the definitions of the policy
> B) you are out of the country for 12 benefit months
> C) you reach the change in your definition of disability. The first 24 months we are looking at your ability to perform the main duties of your own occupation. After 24 months the definition changes to any occupation. We will investigate closer to that time and if you are disabled from any occupation your benefits could continue
> D) the maximum benefit period under any condition 4/20/2019."

21. The June 20, 2013, email misrepresented the terms of page 25 of the LTD Policy, which excludes a period of "Total … disability … after the Insured Employee has *resided* outside the United States or Canada for more than 12 consecutive benefit months for purposes other than employment with the Employer." (emphasis added).

22. Lincoln also sent Mr. Peat a letter dated June 19, 2013, informing him that LTD benefits

4

in the amount of $7500 had been approved.

23. Unfortunately, due to an imbalance of ammonia in Mr. Peat's brain, which also caused mental confusion, a liver transplant was delayed for at least 5 months, until his ammonia levels could be stabilized.

24. Even assuming that he was able to travel to the U.S. in this time frame, the cancellation of his insurance coverage made it impossible for him to afford the care he needed in the U.S. Also, even though he likely satisfied the criteria established by the United Network for Organ Sharing (UNOS) for a liver transplant, the transfer of care to the United States likely would have further delayed his receipt of a new liver.

25. The liver transplant was performed on April 14, 2014. However, after the liver transplant occurred, Mr. Peat remained hospitalized due to organ rejection problems, intestinal complications and other problems involving his digestive tract, and was forced to remain in Sao Paulo for ongoing treatment for problems subsequent to his liver transplant.

26. Meanwhile, in a letter dated October 24, 2013, Lincoln sent Mr. Peat a letter stating that "your benefits are being approved to 1/11/2014 and your claim file has been closed."

27. The only information relied upon for closing the claim was that "[Lincoln] received an e-mail from you dated 10/21/2013 indicating that you currently had an address in Sao Paulo, Brazil. Your benefits began on 1/11/2013, therefore the 12 consecutive benefit months would end on 1/11/2014." Lincoln ignored the fact that the only reason that Mr. Peat remained in Brazil was to qualify for and receive a liver transplant that he needed to survive.

28. There is no indication in the letter or otherwise that Lincoln inquired whether Mr. Peat had in fact changed his residence from the McMurray residence.

29. The letter further stated:

If you return to residency in the United States prior to 1/11/2014, and want to be considered for benefits beyond that date, you are required to provide proof of residency to us and your claim will be reviewed for possible extension of benefits.

30. The October 24, 2013, letter prematurely terminated benefits, in that it was sent prior to the end of the 12-month period and made no inquiry as to where Mr. Peat actually resided, that is, "the place where he dwelled permanently or continuously, or occupied as his legal domicile," http://www.merriam-webster.com/dictionary/reside, or to "the place where he made his permanent home." http://www.oxforddictionaries.com/us/definition/american_english/reside.

31. Under cover of letter dated July 15, 2014, Mr. Peat submitted, through counsel, a letter timely appealing the adverse determination set forth in the October 24, 2013, letter. Along with the July 15, 2014, letter, Mr. Peat submitted the following information to demonstrate that he continued to make his legal domicile or permanent home in the United States, and more specifically, in the Pittsburgh area, including:

- His "Green Card" showing that he has been a permanent resident of the United States since at least 2000, and he remains a *permanent resident* of the United States.
- 2012 federal tax returns and a 2013 W-2 using his McMurray address
- 2014 Property Tax statement and utility bills for the McMurray property.
- Documents showing that he has continued to maintain insurance on his McMurray residence and on his automobile
- Medical reports showing that he remained in Sao Paulo for the sole purpose of receiving medical treatment which, as explained above, was unavailable to him in the United States.

32. Under cover of letter dated July 17, 2015, Mr. Peat also submitted a report from Dr. Flair, Mr. Peat's treating physician in Sao Paulo, explaining that Mr. Peat's diagnoses necessitated his liver transplant, performed on April 14, 2014, that Mr. Peat desired to return to the United States, but that given his medical condition, he must remain in Sao Paulo for ongoing evaluation and necessary treatment subsequent to his liver transplant.

33. Under cover of letter dated August 5, 2014, Mr. Peat submitted additional bills, including a 2014 sewage bill and a 2014 real estate tax bill, establishing his continuing residence in the United States.

34. Thus, Mr. Peat provided the "proof of residency" that the October 24, 2013, letter stated was necessary to perfect his claim.

35. Despite the uncontradicted evidence that Mr. Peat's permanent home remained in the United States, in a letter dated August 22, 2014, Lincoln denied the appeal, relying on the fact that an email dated October 15, 2013, indicated that he had a Brazil address, the same reason for its adverse determination. In deciding the appeal, Lincoln again ignored the facts that the only reason that Mr. Peat remained in Brazil was to receive a liver transplant that he needed to survive and that he continued to maintain his residence in the United States.

36. The letter dated August 22, 2014, advised Mr. Peat that he could pursue a second level of appeal within 180 days.

37. However, when the August 22, 2014, letter arrived, Mr. Peat was still recovering from the liver transplant and undergoing numerous hospitalizations, and he was not competent to undertake an appeal of the termination of his benefits. In addition, he suffered recurrent infections from August

through December 2014.  He underwent reverse colostomy surgery in August 2014 and suffered subsequent renal failures.  He was discharged from the hospital on or about December 9, 2014, with a weight loss of nearly 50 pounds, but needed to remain close to the hospital for weekly blood tests (which gradually reduced in frequency to twice per month and then monthly).  He had great difficulty walking without support, and in late February 2015, he underwent the removal of a tumor from his forehead.  This monitoring continued through late April 2015.

38. Unfortunately, during this dire medical crisis while he was in Brazil awaiting and recovering from his liver transplant, his wife divorced him and the McMurray residence was sold.

39. He was not able to return to the United States until July 2015, having incurred hundreds of thousands of dollars in medical expenses in Colombia and Brazil.

40. By August 2015, he leased an apartment in Pittsburgh and applied for Social Security Disability Insurance ("SSDI") benefits.

41. Thus, from April 5, 2013, through December 9, 2014, Mr. Peat was hospitalized, and was not sufficiently stable to travel until summer 2015.

42. Under cover of letter dated October 7, 2015, Mr. Peat requested that Lincoln reopen the review of the termination of his long term disability benefits and that he be permitted a final administrative appeal of the benefit determination to include documents regarding the cancellation of his medical insurance in the United States, additional medical records demonstrating that his medical condition precluded him from returning to the United States, or even pursuing the second level appeal, and the lease agreement on the apartment in Pittsburgh.  These documents confirmed that Mr. Peat continued to maintain his permanent, legal residence in the United States.

43. Nonetheless, despite these exceptional circumstances, Lincoln waited until November 24,

2015, to inform Mr. Peat that it was unwilling to conduct any additional reviews or even consider the additional information, misstating that the second level appeal was required by ERISA.

44. Meanwhile, in a letter dated November 24, 2015, Lincoln approved an Extension of Death Benefit provided under the group life insurance policy with Mr. Peat's Employer after an annual review.

45. In a letter dated January 9, 2016, Mr. Peat was awarded SSDI benefits.

46. Inasmuch as Lincoln both administered and paid benefits under the LTD Policy, it was operating under a conflict of interest.

47. As the administrator of benefits under the LTD Policy, Lincoln has a fiduciary duty to act for the exclusive benefit of a Plan participant like Mr. Peat under ERISA § 404(a), 29 U.S.C. § 1104(a). As such, the language of the LTD Policy should be construed in favor of Mr. Peat, a plan participant.

48. Mr. Peat has exhausted all administrative levels of appeal.

## IV.  CLAIMS

### COUNT I
### DENIAL OF LTD PLAN BENEFITS

49. The foregoing paragraphs are incorporated herein by reference as if set forth at length.

50. Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), Plaintiff may bring an action to recover benefits due him under the terms of the LTD Plan, to enforce his rights under the terms of the LTD Plan, or to clarify his rights to future benefits under the terms of the LTD Plan.

51. Notwithstanding that Mr. Peat conclusively demonstrated that he is totally disabled under the LTD Policy and that at all relevant times, he resided in the United States, where he made his legal domicile or permanent home, Lincoln wrongfully terminated his benefits as of January 2013.

52. Lincoln violated the full and fair review provisions of ERISA § 503, 29 U.S.C. § 1133, and the Department of Labor regulations thereunder, 29 C.F.R. 2560.503-1(h), in that, *inter alia*, it failed to provide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination, and refused to consider additional information submitted by Mr. Peat.

53. Lincoln violated the manner and content of the notification of benefit determination provisions of ERISA § 503, 29 U.S.C. § 1133, and the Department of Labor regulations thereunder, 29 C.F.R. 2560.503-1(g), in that, *inter alia*, even though Mr. Peat provided all of the information Lincoln claimed it needed in order for him to perfect his claim, it failed to consider that information in denying his appeal.

## COUNT II
## CLAIM FOR VIOLATIONS OF THE FULL AND FAIR PROVISIONS OF ERISA AND BREACH OF FIDUCIARY DUTIES UNDER ERISA § 502(a)(3)

54. The foregoing paragraphs are incorporated herein by reference as if set forth at length.

55. Plaintiff also brings this claim under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which permits a participant to bring an action to enjoin any act or practice which violates ERISA or the terms of the plan or to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of ERISA or the terms of the plan.

56. In terminating benefits under the LTD Policy, Defendant failed adequately to consider the facts and circumstances regarding Mr. Peat's benefit claims, failed adequately to investigate the facts supporting his claim, and made material misrepresentations and omissions in terminating benefits.

57. ERISA § 503, 29 U.S.C. § 1133 requires that every employee benefit plan must:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

58. Defendant violated ERISA § 503, 29 U.S.C. § 1133, and 29 C.F.R. 2560.503-1, the Department of Labor regulations thereunder, and failed to provide a full and fair review by the appropriate named fiduciary.

59. Defendant breached its fiduciary duties under ERISA § 404, 29 U.S.C. § 1104, insofar as it failed to discharge its duties with respect to the LTD Policy solely in the interest of Mr. Peat, a participant, and for the exclusive purpose of providing benefits to participants and to act in accordance with the documents and instruments governing the plan.

60. As a result of Defendant's violations of ERISA, Mr. Peat suffered actual harm as he was denied benefits to which he was entitled under the LTD Policy, he incurred attorneys' fees and costs in engaging in an inadequate administrative process and suffered other financial losses.

## V.  RELIEF REQUESTED

WHEREFORE, Plaintiff prays that this Court:

(a)  Grant judgment in his favor and against Defendant;

(b)  Order that Defendant pay all benefits due under the Plan from January 2013 to the date of judgment, including interest thereon;

(c) Declare Plaintiff's rights under the terms of the Plan, and clarify his rights to future benefits under the terms of the Plan;

(e) Enjoin Defendant to provide a procedure for a full and fair review of adverse determinations under the Plan in accordance with 29 U.S.C. § 1133;

(g) Enjoin Defendant to discharge their fiduciary duties in accordance with 29 U.S.C. § 1104;

(h) Order restitution or surcharge to disgorge Defendant's unjust enrichment in wrongfully denying benefits and/or to make Plaintiff whole for losses, including but not limited to his payment of attorneys' fees caused by Defendant's violation of 29 U.S.C. § 1133 and breach of fiduciary duty;

(i) Order that Defendant pay the costs of suit, including Plaintiff's attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g); and

(j) Award all such other and further relief as this Court deems just and proper.

Dated: April 13, 2016               Respectfully submitted,

                                    s/ Tybe A. Brett
                                    Tybe A. Brett, Esquire
                                    PA I.D. 30064
                                    tbrett@fdpklaw.com
                                    FEINSTEIN DOYLE
                                      PAYNE & KRAVEC, LLC
                                    Allegheny Building, Suite 1705
                                    429 Forbes Avenue
                                    Pittsburgh, PA  15219
                                    T.:  (412) 281-8400
                                    F.:  (412) 281-1007

                                    *Attorneys for Plaintiff*